United States District Court
Southern District of Texas

**ENTERED**

December 16, 2016

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GILBERT A HERRERA, *et al*, | § | |
| | § | |
| Appellants, | § | |
| VS. | § | CIVIL ACTION NO. 4:15-CV-227 |
| | § | |
| TERRY  DISHON, *et al*, | § | |
| | § | |
| Appellees. | § | |

**MEMORANDUM AND ORDER**

This is an appeal brought by Gilbert A. Herrera and Herrera Partners ("Herrera") seeking review of a bankruptcy court decision denying in its entirety Herrera's application for professional fees totaling $476,245 and expenses of $7,726.81.  The fees relate to Herrera's work for the debtor Digerati Technologies Inc. ("Debtor") as its court-approved  investment banker.

The parties agree that this Court has jurisdiction. 28 U.S.C. § 1334(b) and 157(a). Herrera does contest the standing of the parties objecting to its fees, but this issue need not be labored.   The bankruptcy court has an independent duty to review fee applications of professionals even in the absence of an objection. *Shareholders v. Sound Radio, Inc.* 109 F3d 873 (3d Cir. 1997).

## I.      INTRODUCTION

The bankruptcy court found that Herrera's Application should be denied in its entirety because 1) Herrera failed to meet its evidentiary burden of proving the services performed; 2) Herrera's services did not result in benefit to the bankruptcy estate; and 3) Herrera's services were not reasonably likely to benefit the estate when performed.  Memorandum and Opinion Regarding Final Fee application of Debtor's Investment Banker Gilbert A. Herrera and Herrera

Partners for Allowance of Compensation for Services and Reimbursement of Expenses for the Period Beginning July 1, 2013 through April 4, 2014 ("Bk. Mem.") at 6.  As to the second and third holdings, the bankruptcy court set forth, respectively, the standard for professional fees under the then applicable Fifth Circuit precedent (*Matter of Pro-Snax Distributors, Inc.*, 157 F.3d 414, 426 (5th Cir. 1998), and anticipated the standard subsequently adopted by the Fifth Circuit under a case then under *en banc* review by the Fifth Circuit (*Barron v. Newburger, P.C. v. Texas Skyline (In re Woerner)*, 783 F.3d 266 (5th Cir. 2015).  If the bankruptcy court had not anticipated the subsequent holding by the Fifth Circuit, a remand would definitely be required.

In the course of its opinion, the bankruptcy court added considerable detail to its summary finding.  The court found that Mr. Herrera's testimony about his work was not credible, and found that his time entries were unreliable because not made contemporaneously with the work that was ostensibly done.  The bankruptcy court also found that Herrera had not disclosed a prior relation with Herrera's counsel, and that this omission would itself have been sufficient to deny the entire fee application.

## II.     THE DEBTOR

Debtor made its Chapter 11 filing in May 30, 2013.  Debtor's primary assets were 100% stock ownership in two subsidiaries, Hurley Enterprises, Inc. ("Hurley") and Dishon Disposal, Inc. ("Dishon").  Debtor had purchased these companies from their principals (the Hurleys and Dishon, respectively) for promissory notes which were secured by the stock of the two companies.

Debtor's counsel, Hoover Slovacek LLP ("HSLLP"), filed an application to employ Herrera on July 1, 2013, and the application was approved on July 13, 2013.  The purpose of Herrera's employment was to assist in the sale of Hurley and Dishon.  An hourly fee of $350 was

approved for Mr. Herrera and lesser hourly rates for other professionals in the firm.

Approximately one year later, Hurley and Dishon sold for a total of roughly $41 million, which was about two-thirds of the amount the Debtor owed on the Hurley and Dishon notes. Dishon was sold to Buckhorn Disposal, LLC ("Buckhorn") at an auction for $27 million. The Hurleys bought Hurley by bidding a portion of the indebtedness that Dishon owed them.

Herrera filed its application for fees for the period July 1, 2013 through April 4, 2014. The bankruptcy court held a series of evidentiary hearings on the application and heard arguments of counsel. The court's opinion and ruling that is the subject of this appeal was filed in January 2015.

## III.    STANDARD OF REVIEW

The parties agree that a district court reviews a bankruptcy court's conclusions of law *de novo* and findings of fact under the "clearly erroneous" standard. *Barron v. Countryman*, 432 F.3d 590, 594 (5th Cir. 2005). The standard of review is of critical importance in this case. If this court had reviewed Herrera's fee application as a matter of first impression, the court might well have reached a decision different from the decision that was reached by the bankruptcy court. But, this court does not sit as a court of first impression in bankruptcy appeals, and the factual findings made by the bankruptcy court are comprehensive and detailed. "Only upon a definite and firm conviction that the bankruptcy court erred" should a reviewing court reverse findings of fact. *In re Quinlivian*, 434 F.3d 314, 318 (5th Cir. 2006). The appellant bears the burden of showing that the bankruptcy court's findings are clearly erroneous. *Matter of Fairchild Aircraft Corp.*, 6 F.3d 1119, 1128 (5th Cir. 1993).

There is a further standard of review that is germane. The bankruptcy court's award of professional fees is reviewed for an abuse of discretion. *In re Cahill*, 428 F.3d 536, 539 (5th Cir.

2005). The lenient standard is only sensible in view of the bankruptcy court's ongoing familiarity with the course of a bankruptcy proceeding, and its practiced judgment as to the contribution by different professionals.

## IV.     REVIEW OF BANKRUPTCY COURT'S DECISION FOR CLEAR ERROR AND ABUSE OF DISCRETION

The bankruptcy court's foremost concern appears to have been with the inadequacy of Herrera's time records.  As the court correctly noted, fee applications can be denied completely if such records are not detailed and substantiated.  *In re DiLieto,* 468 B.R. 510, 528 (Bankr. D.Conn. 2012).

The court found that the records were not kept contemporaneously, did not satisfy the Bankruptcy Rules's requirement that services be documented in detail, and lumped different services together in single entries.  The bankruptcy court also noted numerous discrepancies between an Interim Fee Application that Herrera had submitted earlier and the Final Fee Application.  Further, Herrera's time entries did not correspond with those of HSLLP on days when the two parties supposedly spoke by telephone.  There were variances between the dates on which these telephone conferences happened, and – even when the dates were congruent – discrepancies as to the amount of time.

As to detail, the court noted that, in a particular two-month stretch, Herrera billed a total of $13,510 for 38.6 hours of "Discussion with Debtor and Debtor's counsel regarding sales process, due diligence process and gathering available documents." Bk. Mem. at 11.  This court cannot controvert the bankruptcy court's holding that this is far too impressionistic an account of professional services rendered to support such a significant charge to the estate.

As to lumping, the applicable guidelines from the office of the United States Trustee provide that services should not be combined into a single time entry unless the tasks performed

in a project are de minimus and do not exceed .5 of an hour in the aggregate.  Bk. Mem. at 12.

Herrera's time records, however, feature many examples of lumping of tasks for which the

aggregate time is substantially more than .5 of an hour.  Bk. Mem. at 12-13.

It is at least conceivable that Herrera could have rectified some of the defects in the time

records with credible testimony during the hearing on the fee application.   However, the

bankruptcy judge found Herrera's testimony "less than entirely credible." Bk. Mem. at 4.

Factual  assessments  of witness credibility are, of course, uniquely appropriate for the judge

who presided at the fee hearing rather than an appellate tribunal.

Beyond the inadequacies of time records and the evidence adduced in support of those

records, a further concern is the absence of proof that Herrera's services were reasonably likely

to benefit the estate when performed.  *Barron v. Newburger, P.C. v. Texas Skyline (In re*

*Woerner)*, 783 F.3d 266 (5th Cir. 2015).  The sale of the two subsidiaries, Dishon and Hurley,

netted roughly half of the anticipated $80 million total.  And, the purchaser of Dishon, for a total

of $27 million, was Buckhorn, with whom Dishon had a relationship well before Herrera entered

the picture.  Herrera was not able to adduce on its own a single bidder for either of the two

companies.  The bankruptcy court actually felt that the evidence may well have supported a

conclusion that, not only did Herrera fail to bring buyers to the table, it may have driven some

away. Bk. Mem. at 20-21 (Vess Harley was emphatic on the point in his testimony).

The bankruptcy court was struck by the fact that Herrera did not  make any trips outside

Houston for the purpose of meeting with any potential purchasers for Hurley, and only took one

trip for Dishon (to meet with Buckhorn).  Herrera did allude to two out-of-town trips, but these

trips are not substantiated by time records.  Bk. Mem. at 27.  The bankruptcy court also stated

that, with one potential buyer, the Hurleys had to market their company on their own without

help from Herrera. Bk. Mem. at 29.

The bankruptcy court further voiced concern as to whether Herrera was institutionally competent to take on the necessary work in this bankruptcy. At the time of its application, Herrera said it had three different levels of professionals who billed at different rates. All of the time records, however, reflected involvement by only two professionals. Herrera also lacked credentials common to investment banking operations. It employed no person registered with the Financial Industry Regulatory Authority or the Texas Securities Board as an Investment Banker (Series 79 license) or as a registered broker (Series 7 license). Bk. Mem. at 31.

In addition to the work that Herrera apparently did not do, it did other work that was outside its portfolio. Time records indicate that it billed the estate at least 20 hours for work performed in connection with helping the Debtor select an independent board member. Bk. Mem. at 30. And, notably, Herrera billed substantial time to the estate for preparing its fee application. *Id.*

Finally, the bankruptcy court expressed great concern over the fact that, in its application to be retained, Herrera failed to disclose that HSLLP had previously represented Herrera in another bankruptcy on a notice of appeal from the same bankruptcy judge who was handling this case. Not only was the case in the same court and in front of the same judge, but it involved what has become the same issue – the denial by the bankruptcy judge of the entire fee sought by Herrera. Herrera responds that its application was replete with disclosures of numerous contacts between it and HSLLP, and that the appeal in question was quickly dismissed. That may be true, but, nonetheless, the non-disclosure of the appeal in question – even if aborted – is troubling.

## V.    CONCLUSION

This Court tries always to be mindful of its limited role in the judicial hierarchy.  Its role is, perhaps, most sharply circumscribed in reviewing a bankruptcy court's disposition of fee applications.  Not only has the bankruptcy judge lived with the bankruptcy, and the major players, for many months, the bankruptcy court's findings are insulated by both the clearly erroneous and the abuse of discretion standard.

It is possible that, reviewing the appellate record under a different rubric, would have produced a different outcome.  Given all the jurisprudential restraints, however, this court must affirm the bankruptcy judge's decision in all its particulars.

**IT IS SO ORDERED**.

Signed at Houston, Texas on this 16th day of December 2016.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE